# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARLOS A. GARCIA-VALENTIE<br>Plaintiff, | :<br>:<br>: | CIVIL ACTION |
| v. | :<br>:<br>: | NO. 06-5097 |
| PAUL F. MCKIBBIN,<br>Defendant. | :<br>:<br>:<br>: | |

## Memorandum and Order

YOHN, J.                                                                                            July ___, 2007

      Plaintiff Carlos A. Garcia-Valentie brings this *pro se* diversity action for breach of contract, breach of fiduciary duty, unjust enrichment and fraud against defendant Paul F. McKibbin.  Presently before the court is a motion filed by defendant to dismiss plaintiff's complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), and for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).  For the reasons that follow, the motion will be granted.

## I.  Background[1]

      Plaintiff's allegations involve his engagement as a consultant for Private Family Network, Inc. ("PFN"), a Delaware limited liability corporation, with its principal place of business in King of Prussia, Pennsylvania.  (Compl. ¶¶ 8, 10.)  PFN is in the business of providing proprietary software and consulting services to high net worth families and their advisors with

---

[1]The factual account accepts all allegations in the complaint as true.  *See Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

respect to wealth management. (*Id.* ¶ 9.) Defendant was a co-founder of PFN. (*Id.*)

On November 30, 2001, plaintiff entered into a Services Agreement with PFN to find new sources of capital for its operations or to find a buyer for the company. (Compl. ¶ 12; Ex. A.) At that time, John Halko was the president and a board member of PFN (Compl. ¶ 12, 13), and he signed the agreement in his capacity as president (Compl. Ex. A). Soon after, Halko resigned and defendant became president of PFN. (Compl. ¶¶ 4, 13.) From November 2001 until the sale of PFN's assets in December 2003, plaintiff assisted defendant in running the company. (*Id.* ¶ 14.) Plaintiff's duties included financial management, marketing and business development. (*Id.*) In June 2002, plaintiff negotiated an infusion of $200,000 in capital from Cheswold Technologies, LLC ("Cheswold") to allow PFN to continue its operations. (*Id.* ¶ 15.)

In the spring of 2003, PFN initiated discussions with Guggenheim Capital, LLC, which developed into an asset purchase agreement whereby Guggenheim Private Family Network, LLC ("Guggenheim"),[2] would purchase all of PFN's assets. (Compl. ¶¶ 16-18.) The asset purchase transaction closed on December 23, 2003. (*Id.* ¶¶ 18, 24.) As part of the asset purchase agreement, defendant, who was president at the time of the closing, was granted a three-year employment contract with Guggenheim. (*Id.* ¶¶ 25-26.) The terms of defendant's employment included annual compensation of $180,000 per year and an annual bonus of $100,000 per year for three years. (*Id.* ¶ 37; Ex. C.)

The asset purchase of PFN by Guggenheim required the approval of PFN's stockholders, its 10% Convertible Subordinate Note holders ("note holders"),[3] Ben Franklin Technology

---

[2] According to the complaint, Guggenheim Private Family Network, LLC, is owned 99.5% by Guggenheim Capital, LLC. (Compl. ¶ 4.)

[3] In the complaint, plaintiff refers to PFN's 10% Convertible Subordinate Note holders as "note holders" and "bondholders," interchangeably. For sake of consistency, this memorandum

Partners, and Cheswold. (Compl. ¶ 19.) At the time of the asset sale, the PFN shareholders were defendant, who owned 1,121,111 shares and was the largest shareholder, Steve Kitching, Tom Clarke, Robert Nigro, Jack Probolus and Cheswold. (*Id.* ¶¶ 20-21; Ex. B.) Plaintiff owned 75,000 options. (Compl. ¶ 23; Ex. B.) The complaint does not allege that plaintiff was a shareholder or a note holder or that the asset purchase required the approval of option holders, like plaintiff.

Prior to the closing of the asset purchase, plaintiff entered into a second Services Agreement with PFN on October 27, 2003 ("the October 2003 agreement"). (Compl. ¶ 27; Ex. D.) The agreement addressed the compensation plaintiff would receive as a result of the asset purchase of PFN and provided for plaintiff to be compensated "a fee of $50,000 or 5% of the value of the Transaction, whichever is greater." (Compl. ¶ 27; Ex. D.) The agreement also provided that PFN and plaintiff would be "solely responsible for their own day-to-day expenses" except for those expenses noted in the agreement. (Compl. Ex. D.) The agreement required any modifications to be in writing. (*Id.*) Defendant signed the agreement as president of PFN. (*Id.*) At the closing of the asset purchase, plaintiff was paid a "partial" payment of $71,500: $55,000 was attributed to the Guggenheim transaction and $16,500 constituted consulting fees that had been in arrears. (Compl. ¶ 28.)

Nearly three years after the closing of the asset purchase, plaintiff filed a complaint on November 17, 2006 asserting the following four claims: breach of contract, breach of fiduciary duty, unjust enrichment and fraud.[4] On January 22, 2007, defendant filed the instant motion to

---

uses the term "note holder."

[4]This case was reassigned to the undersigned on November 28, 2006.

dismiss under Rules 12(b)(1) and 12(b)(6). Plaintiff responded with a letter brief in opposition to defendant's motion to dismiss on February 5, 2007.

## II. Discussion

According to its motion to dismiss, defendant argues that the court should dismiss the complaint for the following reasons: (1) defendant cannot be liable for breach of contract because he was not a party to the October 2003 agreement; (2) plaintiff fails to plead adequately a breach of contract claim; (3) plaintiff's claim for breach of fiduciary duty fails because he lacks standing to bring a derivative action on behalf of PFN; (4) plaintiff lacks standing to bring any cause of action on behalf of PFN's former shareholders and note holders; (5) plaintiff's tort claims for fraud and breach of fiduciary duty are barred by the Pennsylvania statute of limitations; (6) plaintiff fails to plead fraud adequately under Pennsylvania law and with the specificity required by Fed. R. Civ. Proc. 9(b); and, (7) this court lacks diversity jurisdiction because plaintiff fails to plead the amount in controversy in sufficient terms. Finally, defendant requests I dismiss plaintiff's claim for attorney fees. For the following reasons, I will grant defendant's motion to dismiss all claims.

### A. Standards of Review

#### 1. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In evaluating a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989) (citing

*Wisniewski v. Johns-Manville Corp.*, 759 F.2d 271, 273 (3d Cir. 1985)). The court may dismiss a complaint, "only if it is certain that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swin Res. Sys., Inc. v. Lycoming County,* 883 F.2d 245, 247 (3d Cir. 1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

Although technically the Federal Rules of Civil Procedure require affirmative defenses to be pleaded in the answer, the Third Circuit allows "a limitations defense to be raised by a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)). "If the bar is not apparent on the face of the complaint, then it may not afford the basis of dismissal of the complaint under Rule 12(b)(6)." *Robinson*, 313 F.3d at 135 (citing *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

### 2. Rule 12(b)(1)

"A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." *Ballenger v. Applied Digital Solutions Inc.*, 189 F. Supp. 2d 196, 199 (D. Del. 2002). The motion should be granted where the asserted claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Coxson v. Pennsylvania*, 935 F. Supp. 624, 626 (W.D. Pa. 1996) (citing *Growth Horizons v. Delaware County*, 983 F.2d 1277, 1280-81 (3d Cir. 1993)). Additionally, a motion to dismiss under Rule 12(b)(1) may present either a facial or factual challenge to subject matter jurisdiction. *See Mortensen v. First Fed. Savings and Loan*, 549 F.2d 884, 891 (3d Cir. 1977). Facial attacks "contest the sufficiency

5

of the pleadings, and the trial court must accept the complaint's allegations as true." *Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 300 (3d Cir. 2002) (citations omitted).

### B. Breach of Contract Claim (Count I)

In Count I, plaintiff alleges that defendant breached the October 2003 agreement by (a) failing to compensate him "appropriately" for the duties he performed in conjunction with the closing of the asset purchase, and (b) failing to reimburse him for expenses incurred during the Guggenheim transaction, including rental payments for use of an office at "1919 Chestnut Street" and the cost of disposition of PFN's office equipment after the sale. (Compl. ¶ 31.) Defendant seeks dismissal of plaintiff's breach of contract claim because he was not a party to the October 2003 agreement. (Mot. to Dismiss 7-8.) Because I agree that defendant is not a party to the October 2003 agreement, plaintiff's contract claims are not appropriately asserted against him.[5]

"It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract." *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991) (citing *Viso v. Werner*, 369 A.2d 1185 (Pa. 1977)).[6] Although defendant signed the October 2003 agreement obligating PFN to pay plaintiff a fee for either raising capital or finding

---

[5] Because I find that defendant cannot be liable for breach of contract as he was not a party to the October 2003 agreement, it is unnecessary to address defendant's remaining contention that plaintiff failed to plead a breach of contract.

[6] Pennsylvania contract law will govern the contract dispute in this diversity action. In a diversity action, "the choice of law rules of the forum state [determine] which state's law will be applied." *Shuder v. McDonald's Corp.*, 859 F.2d 266, 269 (3d Cir. 1988) (citing *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under Pennsylvania choice of law rules, no choice of law analysis is necessary in cases in which there is no relevant substantive divergence between two bodies of competing law. *See Ratti v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695, 702 (Pa. Super. Ct. 2000). Because the fundamental principles of contract law are generally similar from one state to the next, a choice of law analysis in this instance is unnecessary.

6

a buyer of PFN, the language of the contract makes clear that defendant did not take on any obligation individually.  The primary function of the agreement was to provide services for the benefit of PFN.  Defendant's name does not appear anywhere within the body of the document, and he merely signed the contract in his capacity as president of PFN.  In fact, on the signatory page, defendant's name, title, and signature appear under the heading "Private Family Network, Inc." (Compl. Ex. D.)  Thus, the contract does not reflect an intent to bind defendant personally. *See Electron Energy Corp.*, 597 A.2d at 177.

In response to defendant's motion, plaintiff asserts that because defendant is not separate and distinct from PFN, he should be held liable in his individual capacity.  (Opp'n Br. 4-5.)  To the extent plaintiff may now be arguing that it is appropriate to pierce the corporate veil to proceed against defendant for PFN's breach of contract, plaintiff did not assert a veil-piercing claim in the complaint.  Moreover, even viewing the allegations in the complaint generously, it does not appear that plaintiff has pled facts that would support such a claim.  Pennsylvania courts use an "alter ego" test to determine whether piercing the corporate veil is proper.  *Trs. of the Nat'l Elevator Indus. Pension Health Benefit and Educ. Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003).[7]  While it is alleged in the complaint that defendant was a co-founder of PFN and its largest shareholder, served as its president, treasurer and secretary, and negotiated the asset purchase transaction to serve his best individual interests, these allegations alone are insufficient

---

[7]The alter-ego theory examines the following non-exclusive factors:  gross under capitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder.  *Lutyk*, 332 F.3d at 194 (citation omitted).

to make a veil-piercing claim. Therefore, because defendant is not a party to the October 2003 agreement and because plaintiff has not presented any factual or legal basis for holding defendant liable, plaintiff's breach of contract claim fails. As it relates to defendant, this claim is dismissed with prejudice.

### C. Breach of Fiduciary Duty Claim (Claim II) and Fraud Claim (Claim IV)

In Count II, plaintiff brings a breach of fiduciary claim asserting defendant breached his fiduciary duty to all "stakeholders" by (a) failing to reveal the terms of his employment contract with Guggenheim; (b) failing to exercise sound or reasonable judgment in selecting a conversion method for the 10% Convertible Subordinate Notes; (c) failing to disclose to Cheswold the value of the December 12, 2003 release that terminated Cheswold's ownership of the Source Code Escrow agreement; and (d) engaging in self-dealing. (Compl. ¶¶ 33-34.) Count IV pleads fraud on behalf of the shareholders and note holders because defendant failed to disclose the terms of his employment contract and, thus, misrepresented the value of the transaction to the shareholders and note holders. (*Id.* ¶ 38.) In his motion to dismiss, defendant argues, among other things, that plaintiff's tort claims, filed on November 17, 2006, are barred by the applicable two-year statute of limitations. (Mot. to Dismiss 10.) Defendant claims that the limitations period expired on December 24, 2005, or two years after the Guggenheim transaction occurred. (*Id.*) I agree.

Because this is a diversity action, Pennsylvania law determines the statute of limitations on tort claims. *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006). Under Pennsylvania law, tort actions, including breach of fiduciary duty and fraud, are subject to a two-year statute of limitations. 42 Pa. Cons. Stat. Ann. § 5524(7); *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415,

8

422 (3d Cir. 2005) (discussing breach of fiduciary duty); *AAMCO Transmissions, Inc. v. Harris*, 759 F. Supp. 1141, 1144 (E.D. Pa. 1991) (discussing fraud). In Pennsylvania, a cause of action accrues when "a party has a legal right to institute suit and can maintain a successful action." *ITG, Inc. v. Price Waterhouse*, 697 F. Supp. 867, 869 (E.D. Pa 1988) (citing *Kapil v. Assoc. of Pa. State College and Univ. Faculties*, 470 A.2d 482 (Pa. 1983)). Lack of knowledge, mistake or misunderstanding, however, do not toll the running of the statute of limitations. *Wilder v. United States*, 230 F. Supp. 2d 648, 652 (E.D. Pa. 2002) (citing *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)). Additionally, if the injury and its cause can be reasonably ascertained within the statutory period, no tolling occurs. *Baumgart v. Keene Bldg. Prods. Corp.*, 666 A.2d 238, 240 (Pa. 1995). However, Pennsylvania law applies the discovery rule to toll the running of the statute "until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000).

In this case, the statute of limitations started to run on December 23, 2003 – the closing date of the Guggenheim transaction and the execution of the employment contract entered into by defendant and Guggenheim. There are no allegations of any acts by defendant which may have ensued after December 23, 2003. Thus, by this date, the allegedly wrongful act underlying both tort claims had occurred, i.e. defendant's failure to reveal material facts associated with the asset purchase prior to the deal's approval and closing. Plaintiff did not file his complaint until the end of 2006, nearly three years after the closing and one year past the expiration of the statute of

limitations.[8]  Plaintiff has not made any allegations necessary to invoke any of the Pennsylvania tolling doctrines, such as the discovery rule, to preserve his time-barred tort claims.  *See, e.g., Zlotnick v. Painewebber Inc.*, 1992 U.S. Dist. LEXIS 6780, at *10 (E.D. Pa. May 14, 1992) (dismissing complaint because statute of limitations had run and complaint lacked allegations to establish factual basis for tolling).  Further, as plaintiff's briefing does not address the delay in filing the complaint, plaintiff has not provided even a suggestion that circumstances not alleged in the complaint may have tolled the statute of limitations after it began to run.  Accordingly, the face of the complaint shows that plaintiff's breach of fiduciary duty and fraud claims are barred by the statute of limitations, *Robinson*, 313 F.3d at 135.  These claims are dismissed with prejudice.[9]

### D.  Unjust Enrichment Claim (Claim III)

In Count III, plaintiff asserts an unjust enrichment claim on behalf of PFN's former shareholders and note holders.  (Compl. ¶¶ 36-37.)  However, defendant claims plaintiff lacks standing to bring such a claim because plaintiff has not suffered "an injury in fact." (Mot. to Dismiss 15.)  Defendant points out that plaintiff's unjust enrichment claim is alleged only as to shareholders and note holders.  (*Id.* (citing Compl. ¶¶ 36-37).)  Defendant contends that plaintiff,

---

[8]In his reply, plaintiff argues that the tort claims accrued in February 2005, when McKibbin breached the October 2003 agreement by receiving his first bonus payment and kept it for his personal gain. (Opp'n Br. 7-8.) However, plaintiff's contorted attempt to tie the acts underlying his contract claim into the basis of his tort claims does not render his tort claims timely. According to the facts alleged in the complaint, the breach of the October 2003 agreement occurred not in February 2005 but on December 23, 2003, when plaintiff was not paid in accordance with the contract terms or reimbursed for his expenses. (Compl. ¶¶ 27-28, 31)

[9]Because the applicable statute of limitations bars plaintiff's tort claims, it is unnecessary to consider defendant's remaining arguments with respect to these claims.

calling himself a "stakeholder" to weave himself into this claim, was neither a shareholder nor a note holder at the time of the events alleged; thus, plaintiff has no right to recover under an unjust enrichment theory. (Mot. to Dismiss 15.) Plaintiff counters that because option holders have the right to bring private securities fraud actions, he therefore has standing to bring a derivative action on behalf of the shareholders and note holders. (Opp'n Br. 9.)

The essential elements of an unjust enrichment claim are benefits conferred on a defendant by a plaintiff, appreciation of such benefits by the defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment for value. *Stendardo v. Fed. Nat'l Mortgage Assn.*, 991 F.2d 1089, 1099 (3d Cir. 1993) (citing *Wolf v. Wolf*, 514 A.2d 901, 905-06 (Pa. Super. Ct. 1986)). However, before a party may bring such a claim to court, he must have standing to do so. The constitutional minimum of standing contains three elements:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted). The party who seeks the exercise of jurisdiction bears the burden of alleging facts that "he is a proper party to invoke judicial resolution of the dispute." *Warth v. Seldin*, 422 U.S. 490, 518 (1975). To establish an actionable injury, "the plaintiff must show he [or she] personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant [and] [t]he injury must be concrete and capable of being redressed by the court should the plaintiff prevail on the merits." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188-89 (3d Cir. 2006)

(quotations omitted).

In support of his unjust enrichment claim, plaintiff alleges that defendant "directed the conversion of the 10% Convertible Subordinate Notes in a manner most favorable to his ownership of PFN's stock. In so doing, McKibbin unlawfully retained property that truly belonged to the *note holders* of PFN." (Compl. ¶ 36 (emphasis added).) Plaintiff further contends that "the McKibbin bonus payment of $300,000 was de facto part of the sale price of PFN's assets and should have been distributed to the *shareholders* in proportion to their ownership." (*Id*. ¶ 37 (emphasis added).) While plaintiff pleads that the shareholders and note holders had suffered an actual injury, nowhere does he allege that he personally had been injured by defendant's reported retention of bonus payments and other benefits, or that option holders, as a group, had suffered an injury. Plaintiff's argument that he exercised his options and became a shareholder on March 10, 2004 is unavailing as his transition to shareholder occurred over three months after the alleged events giving rise to the unjust enrichment claim. Additionally, according to the complaint, option holders were not required to approve the asset sale purchase approval process. (*Id*. ¶ 19.) Plaintiff's liberal use of the term "stakeholder" to suggest an injury to himself and other option holders does not overcome his own allegation that the transaction required only the approval of the stockholders, 10% Convertible Note holders, Ben Franklin Technology Partners, and Cheswold. (*Id*.) While plaintiff is correct to point out that in some contexts, stock option holders do have standing to bring private securities fraud actions, *see Wulc v. Gulf & W. Indus., Inc.*, 400 F. Supp. 99 (E.D. Pa. 1975) and *Moskowitz v. Lopp*, 1989 U.S. Dist. LEXIS 14716 (E.D. Pa. Dec. 7, 1989), plaintiff does not seek relief under the Securities Exchange Act. Thus, because plaintiff has not pleaded an "injury in fact," he may not recover

under an unjust enrichment theory. This claim is dismissed with prejudice for lack of standing.[10]

### III. Conclusion

For the aforementioned reasons, defendant's motion to dismiss will be granted, and plaintiff's complaint will be dismissed with prejudice.

---

[10] Because none of plaintiff's claims survive, defendant's request that I dismiss plaintiff's request for attorney fees is moot.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARLOS A. GARCIA-VALENTIE<br>Plaintiff,<br><br>v.<br><br>PAUL F. MCKIBBIN,<br>Defendant. | :<br>:<br>:   CIVIL ACTION<br>:<br>:   NO. 06-5097<br>:<br>:<br>:<br>: |

## ORDER

**AND NOW**, this \_\_\_\_ day of July, 2007, upon consideration of defendant's motion to dismiss for failure to state a claim upon which relief can be granted, filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docket # 6), and plaintiff's reply, **IT IS HEREBY ORDERED THAT** defendant's motion to dismiss is **GRANTED** and plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

_____
William H. Yohn, Jr., Judge